S06A0282. THE STATE v. FIELDEN.
S06A0283. THE STATE v. TOUCHTON.
(629 SE2d 252)

HUNSTEIN, Presiding Justice.

While attending a Valdosta City Council meeting, appellees Fielden and Touchton stood silently as a show of support for another citizen who, after speaking during the "Citizens to be Heard" portion of the meeting, had then refused the mayor's request to step down from the podium. Appellees were thereafter arrested and charged with violating OCGA § 16-11-34 (a), which provides:

> A person who recklessly or knowingly commits any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession is guilty of a misdemeanor.

Appellees challenged the statute contending, inter alia, that it was unconstitutionally vague and overbroad. The trial court ruled in appellees' favor and the State appeals. For the reasons that follow, we affirm.

A statute is unconstitutionally vague if it describes conduct in a manner so unclear that it leaves intelligent people uncertain as to the limits of its application. *Connally v. General Constr. Co.*, 269 U. S. 385, 391 (46 SC 126, 70 LE 322) (1926); *Johnson v. State*, 264 Ga. 590 (1) (449 SE2d 94) (1994). The trial court held that OCGA § 16-11-34 (a) is unconstitutionally vague because certain phrases are not defined in the Code or lack clarity.[1] However, reading the statute according to the natural and obvious import of its language, see generally *Foster v. State*, 273 Ga. 555 (1) (544 SE2d 153) (2001), we conclude that OCGA § 16-11-34 provides a sufficiently definite warning to a person of ordinary intelligence of the prohibited conduct, namely, the reckless or knowing commission of any act which may

---

[1] The trial court found the statute vague because there was no definition for "lawful meeting, gathering or procession" and because the phrase "any conduct which may reasonably be expected" was not sufficiently clear.

reasonably be expected to disrupt or prevent a lawful meeting, gathering or procession, and further that it is not susceptible to arbitrary and discriminatory enforcement. See generally *City of Chicago v. Morales*, 527 U. S. 41, 56 (III) (119 SC 1849, 144 LE2d 67) (1999). Thus, we disagree with that part of the trial court's ruling and hold that the language in OCGA § 16-11-34 (a) is not vague: it is clear and unambiguous. We agree with the trial court, however, that it is overbroad.

A statute that is clear about what it prohibits can nevertheless be unconstitutionally overbroad if it stifles expression or conduct that is otherwise protected by the Constitution. *Johnson v. State*, supra, 264 Ga. at 591 (1) (statute is unconstitutionally overbroad if it reaches a substantial amount of constitutionally protected conduct). The doctrine of overbreadth is particularly applicable where a statute infringes upon behavior protected by the First Amendment. See *Broadrick v. Oklahoma*, 413 U. S. 601, 611-612 (93 SC 2908, 37 LE2d 830) (1973). The First Amendment is "a broad umbrella that shelters all political points of view and shields a wide range of avenues for expression, including symbolic speech. The 1983 Constitution of Georgia provides even broader protection." (Footnote omitted.) *State v. Miller*, 260 Ga. 669, 671 (1) (398 SE2d 547) (1990). Conduct comes under the protection of the First Amendment when it has some communicative element, id., and thus may be regulated by the government only if "the regulation furthers a substantial governmental interest that is unrelated to the suppression of free expression; and the incidental restriction on First Amendment freedom is no greater than necessary to further the governmental interest." Id. As stated by the United States Supreme Court in *N.A.A.C.P. v. Button*, 371 U. S. 415, 433 (83 SC 328, 9 LE2d 405) (1963), "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity. [Cit.]"

OCGA § 16-11-34 (a) proscribes the knowing or reckless commission of "any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession." Disrupting a lawful meeting statutes such as OCGA § 16-11-34 (a) clearly implicate protected First Amendment freedoms. See, e.g., *Dempsey v. Colorado*, 117 P3d 800 (II) (A) (Colo. 2005); *Ervin v. Tennessee*, 40 SW3d 508 (I) (Tenn. Crim. App. 2000); *Hardin v. Iowa*, 498 NW2d 677 (II) (Iowa 1993); *Morehead v. Texas*, 807 SW2d 577 (Tex. Crim. App. 1991); *In re Kay*, 464 P2d 142 (II) (Cal. 1970). In addressing constitutional challenges to comparable statutory provisions, our sister states have recognized that a disruption statute reflects an

> interest of the government [that] is substantial, even compelling, in that it is aimed at balancing the fundamental

right of assembly with that of free speech. That interest would be less effectively achieved were the government to allow "substantial obstruction or interference" with any lawful assembly of its citizens in the name of protecting the First Amendment right to free speech.

*Ervin v. Tennessee*, supra, 40 SW3d at 517. We agree that "the state retains a legitimate concern in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' rights of free association and discussion. [Cit.]" *In re Kay*, supra, 464 P2d at 149 (II). "The interests of free people are served by legislation which balances in a reasonable way the First Amendment rights of those desiring to express opposing points of view." *Brand v. Ohio*, 442 NE2d 805, 809 (C) (Ohio App. 1981).

The State argues that OCGA § 16-11-34 (a) validly balances the fundamental right of assembly with that of free speech in the same manner as found by the Tennessee Court of Criminal Appeals in reviewing the constitutionality of its disrupting a lawful meeting statute. *Ervin v. Tennessee*, supra, 40 SW3d at 513 (I). However, in marked contrast to the statutory provisions in OCGA § 16-11-34, the Tennessee statute requires the accused to commit an offense "with the intent to prevent or disrupt" the lawful meeting, requires that the obstruction or interference with the lawful meeting be substantial, and clarifies that the type of acts covered by the statute are those involving "physical action or verbal utterance." Tenn. Code Ann. § 39-17-306.[2] The Tennessee Court relied upon this statutory language when it rejected Ervin's overbreadth challenge, noting that the statute

does not prohibit speech or other expressive conduct unless the character of the conduct, not its message, "substantially obstructs or interferes with" a lawful meeting. The term "substantial," in this context, means major, consequential, or significant. Further, the statute does not attempt to punish protected conduct unless the actor acts or speaks with the specific intent to "prevent or disrupt a lawful meeting." Only conduct or speech that meets these qualifications is punishable.

To effectuate Tennessee Code Annotated § 39-17-306 within constitutional limits, we interpret it to require that

---

[2] Tennessee Code Annotated § 39-17-306 (a) states the following:
A person commits an offense if, with the intent to prevent or disrupt a lawful meeting, procession, or gathering, the person substantially obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance.

the defendant substantially obstruct the conduct of a lawful meeting with the specific intent of bringing the meeting to an early termination or effectively impairing the conduct of the assemblage. In applying these standards, we are mindful that the nature of the meeting or gathering is necessarily relevant. A level of disruption to be expected at an outdoor political gathering, [cit.], is not what would be reasonably expected at a memorial service for slain [police] officers.

(Footnote omitted.) *Ervin v. Tennessee*, supra at 519 (I) (B).

Unlike the Tennessee statute, OCGA § 16-11-34 (a) does not require proof of a person's intent to disrupt or prevent a lawful meeting as an element of the offense. Nor does it require that the committed act substantially impair the ordinary conduct of the meeting. Under the literal language of the statute, the only proof required is that the person recklessly or knowingly committed any act that may reasonably be expected to prevent or disrupt a lawful meeting, gathering or procession. It does not matter under the statute where or when the accused commits the proscribed act; it does not even matter whether the act, upon its commission, results in any actual prevention or disruption. Any recklessly or knowingly committed act that could reasonably be expected to prevent or disrupt a lawful meeting, gathering or procession is a misdemeanor, regardless where it is committed, how trivial the act, its impact, or the intent of the actor other than the intent to commit the act itself. OCGA § 16-11-34 (a) thus applies to the reckless or knowing commission of such acts as heckling a referee at a sports venue, leaving on the audible ringer of a cellphone during a business symposium, changing lanes into a funeral procession on a rainy day, even playing the stereo loudly in an apartment while a neighbor hosts a dinner party. These examples demonstrate that the literal language of OCGA § 16-11-34 (a) reaches conduct that is at once innocent and protected by the guarantees of free speech, thereby affecting and chilling constitutionally protected activity.

We recognize that where conduct and not merely speech is involved, "the overbreadth of a statute must not only be real but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, supra, 413 U. S. at 615. Based on our analysis of the statutory language in OCGA § 16-11-34 (a), we conclude that it significantly impacts constitutionally permitted conduct without the requisite narrow specificity and fails to balance in a reasonable way the First Amendment rights of those desiring to express opposing points of view. Accordingly, we find its overbreadth is both real and substantial.

The effect of holding a statute to be facially overbroad is that enforcement is totally forbidden until and unless a limiting construction so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression. *Broadrick v. Oklahoma*, supra, 413 U. S. at 613. Our review of cases in our sister states reveals that they have often been able to cure their disruption of lawful meeting statutes by narrowing them in such a manner that the statutory proscription extends only to constitutionally unprotected activities, i.e., those activities intended to prevent or disrupt a lawful meeting and which either cause the untimely termination of the lawful meeting or substantially impair the conduct of the lawful meeting. E.g., *Dempsey v. Colorado*, supra, 117 P3d at 805 (II) (A); *Ervin v. Tennessee*, supra, 40 SW3d at 520; *Schwing v. Ohio*, 328 NE2d 379 (Ohio 1975).

However, we cannot preserve the constitutionality of OCGA § 16-11-34 (a) in this case. We recognize that the literal language of the statute is so overbroad in its scope that it leads to "an absurdity manifestly not intended by the legislature. [Cit.]" *Labovitz v. Hopkinson*, 271 Ga. 330, 336 (519 SE2d 672) (1999). This Court may construe statutes to avoid absurd results, e.g., *State of Ga. v. Mulkey*, 252 Ga. 201, 204 (312 SE2d 601) (1984), and has the authority to narrow a statute to avoid unconstitutional infirmities. E.g., *Howard v. State*, 272 Ga. 242 (1) (527 SE2d 194) (2000). However, under our system of separation of powers this Court does not have the authority to rewrite statutes. "[T]he doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature. We can not add a line to the law." (Citations and punctuation omitted.) *Etkind v. Suarez*, 271 Ga. 352, 353 (1) (519 SE2d 210) (1999). Curing the overbreadth in OCGA § 16-11-34 (a) would be less a matter of reasonable judicial construction than a matter of substantial legislative revision.

Therefore, giving appropriate deference to the legislative process and separation of powers, we decline to rewrite OCGA § 16-11-34 (a). The trial court correctly ruled that OCGA § 16-11-34 (a) is unconstitutional and thus void. Art. I, Sec. II, Par. V. See also *Bunn v. Burden*, 237 Ga. 439 (228 SE2d 830) (1976) (criminal indictment based upon a void statute is nugatory, without any force or effect and should be dismissed).

*Judgment affirmed. All the Justices concur, except Carley and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

The majority correctly holds "that the language in OCGA § 16-11-34 (a) is not vague: it is clear and unambiguous." Maj. op. p. 445.

However, I cannot agree that the language is so overbroad that interpreting it narrowly so as to exclude constitutionally protected expression "would be less a matter of reasonable judicial construction than a matter of substantial legislative revision." Maj. op. p. 448.

As Justice Thompson recognized in *Howard v. State*, 272 Ga. 242, 244 (1) (527 SE2d 194) (2000), "before considering whether [a] statute that affects protected speech is [unconstitutionally] overbroad, it must be determined if it can be narrowly construed by this Court."

> To withstand constitutional attack, a statute or ordinance which prohibits speech "must be carefully drawn *or* be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." [Cit.] (Emphasis supplied.)

*Howard v. State*, supra at 243 (1).

> Our judicial responsibility requires us to consider the legislature's intent in enacting the law and to construe the statute to give effect to that intent when possible. This role means that we must give a narrowing construction to a statute when possible to save it from constitutional challenge. [Cits.]

*Clark v. Wade*, 273 Ga. 587, 598 (IV) (544 SE2d 99) (2001). The legislative intent here is clear and legitimate. The purpose of OCGA § 16-11-34 (a) is to discourage deprivation of the constitutional right of the people to assemble peaceably together in meetings. See *State v. Schwing*, 328 NE2d 379, 384 (II) (Ohio 1975). As the majority recognizes, " 'the state retains a legitimate concern in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' rights of free association and discussion.' [Cits.]" *Dempsey v. People*, 117 P3d 800, 805 (II) (A) (1) (Colo. 2005).

In the seminal case of *In re Kay*, 464 P2d 142, 150 (III) (Cal. 1970) (In Bank), the Supreme Court of California construed a statute which on its face applied to "every person who . . . willfully disturbs or breaks up any assembly or meeting," in light of its purpose and the competing First Amendment interests, as authorizing "the imposition of criminal sanctions only when the defendant's activity itself — and [n]ot the content of the activity's expression — substantially impairs the effective conduct of a meeting."

> The court then identified a three-part test by which this standard should be measured: (1) the nature of the meeting

involved; (2) whether the activity substantially impaired the conduct of the meeting; and (3) whether the defendants knew, or should have known, that their conduct violated an applicable custom, usage, or rule of the meeting. [Cit.]

*State v. Hardin*, 498 NW2d 677, 680 (Iowa 1993). See also *Dempsey v. People*, supra at 806 (II) (A) (2); 1 Smolla & Nimmer on Freedom of Speech § 10:38, p. 10-72 (2004).

When OCGA § 16-11-34 (a) is tested by these requirements, it clearly does not contain any deficiency with respect to the first or third prongs. The statute does not require a specific intent to prevent or disrupt a lawful meeting. See *Easley v. State*, 266 Ga. App. 902, 905 (4) (598 SE2d 554) (2004) (aggravated assault statute). Under the third prong, however, such a specific intent, although contained in some similar statutes in other states, obviously is not constitutionally necessary. Thus, the majority's reliance on *State v. Ervin*, 40 SW3d 508, 519 (I) (B) (Tenn. Crim. App. 2000) is erroneous because the statute analyzed there required a specific intent and the court did not hold that such intent was necessary, but rather that it was constitutionally sufficient. The requirement in OCGA § 16-11-34 (a) that the defendant "recklessly or knowingly commit[ ] any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession" means at least that the defendant "should have known[ ] that [his] conduct violated an applicable custom, usage, or rule of the meeting." *State v. Hardin*, supra. See also *State v. Encalade*, 505 S2d 87, 91-92 (La. App. 1987) (upholding constitutionality of a statute narrowly proscribing the disruption of a lawful assembly in "a manner that would foreseeably disturb or alarm the public"). Compare *State v. Miller*, 260 Ga. 669, 674 (2) (398 SE2d 547) (1990) (narrowing construction as to intent was necessary and was accomplished even though statute did not contain any language of intent). Therefore, OCGA § 16-11-34 (a) explicitly meets the third prong of the *Kay* test. Furthermore, its language requiring a reasonable expectation of disruption necessarily contemplates a determination of the nature of the meeting and, thus, explicitly meets the first prong.

Moreover, the language which expressly requires the commission of an act shows that the statute is directed at conduct and not speech. OCGA § 16-11-34 (a), like another statute which prohibited disruptive activities on State property and was previously upheld by this Court,

clearly seeks to proscribe conduct, not free speech, and ". . . that conduct — even if expressive — falls within the scope of otherwise valid criminal laws that reflect legitimate state

interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. . . ." [Cits.]

*State v. Boone*, 243 Ga. 416, 419 (1) (254 SE2d 367) (1979).

As for the second prong of the *Kay* test, "with minimal variations, other courts have likewise adopted an actual disruption standard. [Cits.]" *Dempsey v. People*, supra. Thus, OCGA § 16-11-34 (a) is overly broad in only one respect. It fails expressly to require that the act committed result in an actual, substantial prevention or disruption of a lawful meeting. What the statute prohibits is the reckless or knowing commission of an act which may reasonably be expected to disrupt a lawful meeting.

> Some such [acts] can be constitutionally proscribed. Therefore, by simply narrowing the broad statutory provision in such a manner that it extends only to constitutionally unprotected activities, this court does not transform it into a prohibition of conduct not formerly prohibited by the statute. Instead, we merely remove from the statute any prohibition against constitutionally protected interruptions or disturbances.

*State v. Schwing*, supra at 386 (II). See also *Morehead v. State*, 807 SW2d 577, 581 (Tex. Crim. App. 1991). Disturbances of lawful assemblages, with the requisite statutory intent, that are not constitutionally protected are those which either cause the termination of the assemblage in an untimely manner or substantially impair the conduct of the lawful meeting. *State v. Schwing*, supra. Construing OCGA § 16-11-34 (a) as prohibiting only those two types of disruptions, "the statutory provision was not unconstitutionally overbroad." *State v. Schwing*, supra. "This construction achieves the apparent legislative purpose while preserving the statutory language and the delicate balance between competing freedoms." *Morehead v. State*, supra.

Because the majority has needlessly cast OCGA § 16-11-34 (a) aside based on a faulty analysis, and failed to fulfill this Court's responsibility to effectuate the legislative intent and, if possible, to save the statute from constitutional challenge by means of a narrowing construction, I dissent to the judgment of affirmance.

I am authorized to state that Justice Hines joins in this dissent.

DECIDED APRIL 25, 2006.

*Richard W. Shelton, Solicitor-General*, for appellant.

*Langdale & Vallotton, Robert A. Plumb, Jr.*, for appellees.

*Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General*, amici curiae.